FILED

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Alexandria Division

2015 NOV 13 P 4:10

CLERK US ... COURT
ALEXANDRIA, VIRGINIA

| | |
|---|---|
| CLARE LOCKE LLP, | ) |
| Plaintiff, | ) Civil No. 1:15-CV-1515 (JCC|JFA) |
| v. | ) |
| RAHEEM JEFFERSON BRENNERMAN, and BLACKSANDS PACIFIC ENERGY CORPORATION, INC. d/b/a *Blacksands Pacific*, | ) |
| Defendants. | ) |

## COMPLAINT AND DEMAND FOR JURY TRIAL

Plaintiff Clare Locke LLP files this Complaint against Defendants Raheem Jefferson Brennerman and Blacksands Pacific Energy Corporation, Inc. ("Blacksands") and states as follows:

### SUMMARY OF THE ACTION

1. Clare Locke LLP files this action for breach of contract and quantum meruit to recover more than $95,000 in unpaid legal bills from a multinational oil and gas company.

### THE PARTIES

2. Plaintiff Clare Locke LLP is a limited liability partnership with its principal place of business in Alexandria, Virginia. Clare Locke LLP is a boutique law firm devoted to litigating complex business disputes and representing clients facing high-profile reputational attacks. Clare Locke LLP has two partners, both of whom reside in and are domiciled in Virginia: Thomas Clare and Elizabeth Locke. Thomas Clare and Elizabeth Locke opened Clare Locke LLP in March 2014.

3. Defendant Blacksands Pacific Energy Corporation, Inc. ("Blacksands") is incorporated in Delaware, with its principal place of business in Los Angeles, California. Blacksands explores for, produces, and sells crude oil and natural gas, and trades and supplies crude oil and petroleum products. Blacksands is a directly held, wholly owned subsidiary of Blacksands Pacific Group, Inc. ("Blacksands Pacific"). (*See* "At a Glance: Growth, Global Reach & Profitability," Blacksands Pacific International Energy Group, *available at* http://www.blacksandspacific.com/presentation/Blacksands-Pacific-At-A-Glance-Overview-Web-10-07-14.pdf (Ex. 1)). Blacksands Pacific's "asset portfolio reaches from the United States – where its operations are focused on the Gulf Coast, Southern United States – to Alberta and Saskatchewan region of Canada, Gulf of Guinea (West Africa), East Africa and South East Asia region." (*Id.*) Although financial information regarding Blacksands and Blacksands Pacific does not appear to be publicly available, according to its website, in 2014 Blacksands Pacific earmarked $1 billion for investment into its African operation alone.

4. Defendant Raheem Jefferson Brennerman is the CEO, chairman, and co-founder of Blacksands. Mr. Brennerman is a resident of Nevada and a dual citizen of the United States and the United Kingdom. Mr. Brennerman has worked as an investment banker and in a real estate and energy business in New York, London, and Luzern, Switzerland. Upon information and belief, Mr. Brennerman is not now, and has never been, a resident of Virginia.

## JURISDICTION

5. This court has subject matter jurisdiction over the claims stated herein under 28 U.S.C. section 1332 because there is complete diversity of citizenship and the amount in controversy is greater than $75,000. *See* 28 U.S.C. § 1332(a)(1). The amount in controversy is currently $97,092.85 in unpaid legal fees, costs, and expenses, exclusive of interest.

6. Venue is also proper under 28 U.S.C. § 1391, as the causes of action described herein and giving rise to the claims against Defendants arose in Alexandria, Virginia.

## STATEMENT OF FACTS

7. Defendants signed a retention agreement with Kirkland & Ellis LLP ("Kirkland") in which Kirkland agreed to represent Defendants in defamation litigation against multiple media organizations. At Kirkland, Thomas Clare and Megan Meier performed legal work on that defamation litigation, filing a suit on behalf of Blacksands and Mr. Brennerman in the Superior Court of the State of Delaware, which was removed to the United States District Court for the District of Delaware in February 2014.

8. In March 2014, Thomas Clare and Elizabeth Locke left Kirkland and started Clare Locke LLP, with Megan Meier joining the firm shortly thereafter.

9. At 12:00 p.m. Eastern on May 19, 2014, during a telephone conference among Mr. Brennerman, Mr. Clare, and Ms. Meier, Defendants entered into an oral contract with Clare Locke LLP to transfer the existing defamation litigation from Kirkland to Clare Locke LLP and to pay Clare Locke LLP's lower hourly rates for legal services on the litigation. Later that same day, at 9:49 p.m. Eastern, Mr. Brennerman confirmed the transfer of the defamation litigation in writing.

10. Mr. Brennerman and Blacksands repeatedly ratified and confirmed the existence of the oral contract and their attorney-client relationship with Clare Locke LLP. For example, on May 20, 2014, May 22, 2014, May 23, 2014, May 25, 2014, July 3, 2014, July 12, 2014, July 17, 2014, July 20, 2014, September 9, 2014, September 11, 2014, and December 17, 2014, Mr. Brennerman and other Blacksands employees wrote emails to Clare Locke LLP beginning with the words "*Legally Privileged & Confidential Attorney-Client Communication*," asking questions and providing facts and instructions for the defamation litigation, and never once

3

stating that Clare Locke LLP should cease performing legal services for Mr. Brennerman and Blacksands.

11. On May 20, 2014, Mr. Brennerman wrote to Clare Locke LLP, "I will now leave the litigation in your hands and please update me as required." Per Defendants' oral and written requests to be updated regarding the litigation, Clare Locke LLP provided written litigation updates via email that were labeled "***Legally Privileged & Confidential Attorney-Client Communication***." Mr. Brennerman and other Blacksands employees responded to those emails, including by asking Clare Locke LLP to perform legal services in connection with the defamation litigation.

12. In addition, Blacksands' in-house counsel reviewed work that Clare Locke LLP was performing and provided input. For example, on September 11, 2014, Clare Locke LLP emailed drafts of several documents to be filed on behalf of Blacksands and Mr. Brennerman in the defamation litigation to Blacksands' Chief Legal Counsel Michael Sloanes, Mr. Brennerman, and Mr. Brennerman's assistant (a Blacksands employee), who acknowledged receipt of the drafts. Also on September 11, 2014, Mr. Brennerman's assistant emailed Clare Locke LLP, copying Mr. Brennerman, and providing comments from Blacksands' "internal colleagues ***and counsel***" on a document that Clare Locke LLP had drafted to be filed on behalf of Blacksands and Mr. Brennerman in the defamation litigation.

13. Blacksands and Mr. Brennerman also ratified and confirmed the existence of their oral contract by paying Clare Locke LLP for the legal services rendered from May to September 2014, according to the rates specified in connection with the oral contract and as set forth on Clare Locke LLP's invoices to Defendants. Those invoices were paid via five wire transfers, ***four of which came from Blacksands*** and one of which came from Mr. Brennerman.

14. In reliance on the oral contract for legal services in return for compensation at the agreed rates, Clare Locke LLP performed legal services for the Defendants from May 2014 until June 2015. This representation included, but was not limited to: filing oppositions to multiple motions to dismiss and traveling to Delaware to present oral argument at multiple hearings. (*Brennerman v. Guardian News & Media Ltd.*, No. 1:14-cv-00188-SLR-SRF (D.D.E. Filed on Feb. 12, 2014) (Ex. 2)). Defendants never requested that Clare Locke LLP cease performing legal services. To the contrary, as set forth above, Mr. Brennerman and other Blacksands employees repeatedly requested that Clare Locke LLP provide legal services in connection with Mr. Brennerman's and Blacksands' defamation litigation.

15. In October 2014, Defendants stopped paying Clare Locke LLP's invoices. Clare Locke LLP has made numerous oral and written requests for payment from Defendants for over a year, but Defendants have not settled their invoices. In fact, Defendants have repeatedly stated that they plan to settle their invoices, but they have not done so and they have not made any payment toward their invoices since October 2014.

16. Currently, Clare Locke LLP has outstanding legal fees, costs, and expenses totaling $97,092.85, exclusive of interest.

17. On June 12, 2015, Mr. Clare notified Defendants that Clare Locke LLP would withdraw from the representation if Defendants did not settle their outstanding balance by June 19, 2015. Defendants acknowledged receipt of this email, but did not pay the balance. Therefore, on June 23, 2015, Clare Locke LLP withdrew as counsel and notified Defendants of the withdrawal.

18. Clare Locke LLP has devoted considerable time and made multiple attempts to resolve this fee dispute outside the courtroom, by requesting the outstanding fee in writing many

times and by inviting Defendants to participate in a confidential arbitration process. Defendants rejected those attempts, and therefore those efforts have been unsuccessful. Clare Locke LLP has exhausted all other options and now brings this action to recover payment of the outstanding legal fees owed to it.

## CLAIMS FOR RELIEF

### COUNT I
### Breach of Contract

19. Plaintiff incorporates paragraphs 1-18 as if fully set forth herein.

20. On April 14, 2014, Clare Locke LLP and Defendants entered into a valid and enforceable express oral contract, pursuant to which Clare Locke LLP agreed to provide legal services in connection with Defendants' defamation matters and Defendants agreed to pay certain hourly rates in exchange for those services.

21. Defendants ratified their contract with Clare Locke LLP through the parties' course of dealing by, among other things, paying certain Clare Locke LLP invoices according to the hourly rates agreed by the parties, requesting and receiving updates about the status of the litigation, and responding to emails labeled as legally privileged, attorney-client communications.

22. Clare Locke LLP fulfilled its obligations under the contract, providing legal services in connection with Defendants' defamation matters from May 2014 until June 2015.

23. Defendants breached a material term of the contract by failing to pay for the legal services rendered to them from October 2014 through June 2015.

24. As a direct and proximate result of Defendants' breach, Clare Locke LLP has been damaged in the amount of $97,092.85.

### COUNT II
### Quantum Meruit

25. Plaintiff incorporates paragraphs 1-18 as if fully set forth herein.

26. From April 14, 2014 through June 23, 2015, Clare Locke LLP conferred benefits upon Defendants, namely legal services including filing oppositions to motions to dismiss and presenting oral argument at multiple hearings.

27. Defendants knew of the conferral of the benefits upon them, because Clare Locke LLP regularly updated them regarding the work Clare Locke LLP was performing and how Defendants' cases were progressing. Defendants knew that Clare Locke LLP's legal services were not being gratuitously rendered because they had previously agreed to pay Clare Locke LLP's hourly rates for legal services, because they had indeed paid those hourly rates for Clare Locke LLP's services from May 2014 until September 2014, and because Clare Locke LLP continued to send Defendants invoices for the legal services being rendered from October 2014 through June 2015.

28. From October 2014 until June 23, 2015, Defendants accepted and retained the benefit of Clare Locke LLP's legal services under circumstances that would render it inequitable for Defendants to retain the benefit of those services without paying for them. Specifically, even though Defendants received updates and invoices repeatedly apprising them of the legal services Clare Locke LLP was providing and the briefs and arguments Clare Locke LLP was making for Defendants' benefit, Defendants never told Clare Locke LLP to stop performing legal services, but repeatedly asked Clare Locke LLP to continue performing legal services for Defendants' benefit.

29. As a direct and proximate result of Defendants' failure to pay Clare Locke LLP for the legal services rendered and costs incurred, Clare Locke LLP has suffered damages in the amount of $97,092.85. It would be inequitable for the Defendants to retain the benefit of Clare Locke LLP's legal services without paying for them.

7

## PRAYER FOR RELIEF

30. Plaintiff prays for judgment against defendants as follows:

   a) Damages in the amount of $97,092.85;

   b) Costs and fees incurred herein, including reasonable attorneys' fees;

   c) Further relief that this Court deems just and proper.

## JURY DEMAND

Plaintiff Clare Locke LLP demands a trial by jury on all issues so triable.

Date: November 13, 2015

Respectfully submitted,

*/s/ Megan L. Meier*

Thomas A. Clare (VSB #39299)
Elizabeth M. Locke (VSB #71784)
Megan L. Meier (VSB # 88720)
Clare Locke LLP
902 Prince Street Alexandria, VA 22314
Telephone: (202) 628-7403
tom@clarelocke.com
libby@clarelocke.com
megan@clarelocke.com

9